UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard R. Wescott

     v.                             Civil No. 22-cv-059-LM

Dr. Wendy Martin, et al.

## Report and Recommendation

Richard Wescott, who is an inmate at the New Hampshire State Prison and is proceeding pro se, filed a complaint and an amended complaint under 42 U.S.C. § 1983 and § 1985.  Wescott brings eighteen claims against twelve defendants, alleging that they have violated his Eighth Amendment right to mental health care.  The complaint and amended complaint were referred for preliminary review.  See LR 4.3(d); 28 U.S.C. §§ 1915A & 1915(e)(2).

## Standard of Review

In an action brought by a prisoner against prison officers or officials, the court may dismiss claims if subject matter jurisdiction is lacking, a defendant is immune, the prisoner fails to state an actionable claim, or the action is frivolous or malicious.  § 1915(e)(2); § 1915A.  For purposes of deciding whether the complaint states an actionable claim, the court

takes the factual allegations, without legal conclusions, as true and determines whether those facts are sufficient to state a plausible cause of action.  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 102 (1st Cir. 2013); Machado v. Weare Police Dept., 494 F. App'x 102, 105 (1st Cir. 2012).  The court liberally construes a pro se complaint, using a less stringent standard than would apply to a pleading filed by a lawyer.  Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## Procedural Background

Under Federal Rule of Civil Procedure 8(a), a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." In addition, each allegation in the complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1); see also Fed. R. Civ. P. 10(b) (each claim should be "limited as far as practicable to a single set of circumstances.".  The purpose of Rule 8 is to notify defendants of the claims brought against them and to protect defendants from the burden of responding to unnecessarily lengthy pleadings.  Andrawis v. City of E. Providence, No. 21-12062-RGS, 2021 U.S. Dist. LEXIS 241064, 2021 WL 5989966, at *1 (D. Mass. Dec. 17, 2021).  Complaints that include immaterial descriptions, digressions, and detail, which cause unnecessary length, do not comply with Rule 8.  See, e.g.,

Currier v. Town of Gilmanton, No. 18-cv-1204-LM, 2020 WL 1923357, at *2, 2020 U.S. Dist. LEXIS 69878, at *4 (D.N.H. Apr. 21, 2020).

Wescott's initial complaint is 203 pages long, in which he alleges eighteen long and convoluted claims, and he adds two pages in the amendment. The length of Wescott's complaint, in the context of this case, does not comply with Rule 8(a). See, e.g., Wade v. Tri-Wire Eng'g Solutions, Inc., No. 20-10523-LTS, 2021 U.S. Dist. LEXIS 43102, 2021 WL 847989, at *1 (D. Mass. Mar. 5, 2021) (82 pages likely failed to comply with Rule 8(a)); Fusco v. Rogers, 18-cv-290-JAW, 2019 U.S. Dist. LEXIS 51303, 2019 WL 1387686, at *3 (D. Me. Mar. 27, 2019) (85 pages that included "immaterial and confusing information" failed to comply with Rule 8(a)). Wescott includes, among other unnecessary allegations, long and detailed recitations of incidents from his childhood, experiences during his service in the Air Force, and other life events that may be pertinent in the context of counseling or therapy but are unnecessary to support his claims in this case.

Ordinarily, Wescott would be required to file an amended complaint that complies with Rule 8(a). To avoid unnecessary delay, however, the court will review the initial complaint with the amendment under the preliminary review standard, and Wescott

will be required to file an amended complaint only if and to the extent there are claims that survive preliminary review.

## **Factual Background**

In the complaint, Wescott states that he has been incarcerated at the New Hampshire State Prison since June 10, 1998.  His sentence of ten to thirty years in prison, to be followed by a consecutive five-to-thirty-year term, was imposed after he pleaded guilty to four counts of aggravated felonious sexual assault.  Wescott v. Gerry, 14-cv-056-SM, 2014 U.S. Dist. LEXIS 55799, 2014 WL 1603915, at *1 (Apr. 22, 2014).

Prior to his incarceration, Wescott served in the United States Air Force.  He alleges that he is a disabled veteran and that he has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and Major Depressive Disorder Recurrent ("MDDR").  He also alleges that he has survivor's guilt.  Wescott describes incidents beginning in his childhood that he contends contributed to his diagnoses and mental health issues.

While in prison, Wescott has received treatment for his mental health issues.[1]  He alleges that he began seeing Dr. Paul Brown, a psychiatrist at the prison, on October 17, 2017.

---

[1] In his complaint, Wescott cites exhibits to support his allegations.  No exhibits were filed with the complaint or elsewhere in the case.

Wescott contends that his appointments with Dr. Brown were for medication and not for psychotherapy.

Wescott provides detailed summaries of his many treatment sessions with Dr. Brown that are apparently taken from Dr. Brown's treatment notes.  In more than fifty paragraphs, Wescott reviews the treatment notes that Dr. Brown made that address his suicidal thoughts, PTSD, depression, survivor's guilt, and other mental health issues.  The notes cover the period from October of 2017 through October of 2020, and meetings after his suicide attempt.[2]  Wescott alleges that Dr. Brown tried different medications and amounts of medication to address his symptoms.

Wescott alleges that on November 18, 2020, he was summoned to the office of Abbey Simon, who is identified as a "clinician" at the prison.  Wescott alleges that Sheila Fournier, also identified as a clinician, was in Simon's office when he arrived.  Simon told Wescott that she was concerned because of a recorded telephone call between Wescott and a friend that suggested Wescott was planning for his death.  Simon completed a suicide assessment form on Wescott, which he contends was inaccurate and deficient.[3]

---

[2] Wescott also alleges that Dr. Brown's treatment notes contain certain errors.

[3] Although Wescott cites Exhibits 128-134 as the assessment form, he did not file that exhibit with the complaint nor is that document found elsewhere in the record.

Sheila Fournier interacted with Wescott in the context of the sex offender program at the prison beginning in February of 2020. Wescott alleges that based on the discussions and his statements during the program, Fournier knew of his history of PTSD and MDDR and of his guilt and remorse about his conduct that resulted in his convictions and other incidents in his life. He contends that he was open about his suicidal thoughts. He alleges that Fournier and Simon were responsible for Wescott being moved to cells with roommates whom he did not like. He also alleges that he planned to kill one of the roommates.

Wescott alleges that he planned to commit suicide on Christmas night in 2020, at 10:00 p.m., but kept his plans secret. He also planned to cut his roommate's eyes so he could no longer watch television. Wescott had taped a small saw onto his finger and, at the planned time, he began to cut the artery in his left arm. He describes the suicide attempt in detail.[4] Eventually, he went to sleep while his arm was bleeding. Paramedics arrived, and he was taken to the hospital.

Since that event, Wescott has been housed in the secure psychiatric unit. He alleges that he again planned suicide in

---

[4] A part of the plan did not go as expected when his blood coagulated more than he had anticipated, which he alleges precluded his attack on his roommate.

July of 2021, by hanging.  He decided not to go through with that plan, or his plan was unsuccessful.

Wescott alleges eighteen claims.  In many of his claims, Wescott alleges that the defendants violated the consent decree in <u>Laaman v. Helgemoe</u>, Civ. No. 75-cv-258 (D.N.H.), and an order issued in <u>Holliday v. Curry</u>, No. 04-E-203 (Merr. Cty. Sup. Ct. May 19, 2006), which ordered relief for violations of the <u>Laaman</u> decree.  Those cases are cited as the <u>Laaman</u> and the <u>Holliday</u> order.

## **<u>Claims Listed</u>**

**Count I:**  Dr. Brown's care and treatment violated the Eighth Amendment, the Hippocratic Oath, and New Hampshire Department of Corrections ("DOC") policy and procedure directives ("PPD").

**Count II:**  Abby Simon violated the Eighth Amendment when she was deliberately indifferent to Wescott's known mental health risks and did not comply with the standard of care when she completed the suicide risk assessment of him and found he was at low risk of suicide.

**Count III:**  Sheila Fournier violated Wescott's Eighth Amendment right to mental health care by failing to recognize his risk of suicide during the sexual offenders' treatment meetings.

**Count IV:**  Dr. Wendy Martin "in her senior position as Chief Psychiatrist" violated the Eighth Amendment by failing to properly train and supervise Brown, Simon, and Fournier.

**Count V:**  The companies that provide medical services to the prison, MHM Correctional Services, Inc., MHM Correctional Services, LLC, and their parent company, Centurion of New Hampshire, LLC, violated the Eighth Amendment by failing to provide adequate medical and mental health care.

**Count VI:** DOC Commissioner Helen Hanks "used her positions within the DOC to create a "State Created Danger" purposely inflicting emotional turmoil and injury upon [Wescott]," in violation of the Eighth Amendment.  Doc. 1, at 84.  Hanks signed contracts with MHM, LLC and MHM, Inc. that did not comply with the Laaman decree and the Holliday order.

**Count VII:**  Wescott repeats the Eighth Amendment claim alleged in Count VI against the former Commissioner, William Wrenn, who, Wescott alleges, was commissioner from 2005 until 2017.

**Count VIII:**  The "Director of Medical and Psychiatric Services," Paula Mattis, violated the Eighth Amendment by causing a "State Created Danger" because she is not qualified for her position and did not provide satisfactory responses to his grievances.

**Count IX:**  Former Director of Medical and Psychiatric Services Dr. Robert McLeod, who was director from the time Wescott arrived in 1998 until 2010, violated the Eighth Amendment by failing to comply with the <u>Laaman</u> decree and the <u>Holliday</u> order.

**Count X:**  Former chief psychiatrist, Dr. Daniel Potenza, violated the Eighth Amendment by failing to train his staff to comply with the <u>Laaman</u> decree and the <u>Holliday</u> order.

**Count XI:**  Governor Chris Sununu violated the Eighth Amendment because Wescott was not permitted to communicate with the governor, through a letter that voiced his complaints about Hanks and Mattis being unqualified, as is required pursuant to RSA 622:15.

**Count XII:**  Commissioner Hanks is liable for an Eighth Amendment violation on a theory of vicarious liability for contracting with HMH or Centurion since 2017.

**Count XIII:**  Dartmouth Hitchcock violated the Eighth Amendment by providing constitutionally inadequate mental health services provided between 2002 and 2013.

**Count XIV:**  Ahmed Mohamed Gabir violated the Eighth Amendment because Gabir was not qualified to provide PTSD therapy but attempted to do so and did not provide proper services.

**Count XV:**  Mattis, Gabir, and Fournier were not properly licensed which was a violation of PPD 6.05, state laws, and the Eighth Amendment.

**Count XVI:**  Shasta Jorgenson, a Centurion employee and the project manager for the contract between the DOC and Centurion, violated the Eighth Amendment because she had the duty to monitor contract compliance and unqualified personnel were treating Wescott at the time of his suicide attempt.

**Count XVII:**  "The plaintiff asserts numerous and flagrant violations with state RSA's, Administrative Rules and Policy and Procedure Directives."  Doc. 1, ¶ 408, at 168.

**Count XVIII:**  Hanks, MHMI, and MHML conspired not to provide him treatments required under the contracts and treatments approved by the American Psychological Association in violation 42 U.S.C. § 1985.

## Discussion

In summary, Wescott alleges claims that certain defendants violated his Eighth Amendment rights by providing inadequate treatment for his mental health needs.  He alleges that some defendants failed to comply with the Laaman decree and the Holliday order.  He alleges that some defendants are liable because they caused a state created danger.  In other claims, he asserts that defendants violated the contracts between the DOC

and the companies that provided health care at the prison.  He
also asserts claims that the defendants violated state statutes
and prison policies and procedures.  In his last claim, he
alleges a conspiracy under § 1985.

    A.  Eighth Amendment

    To state a claim that a defendant has violated the Eighth
Amendment by providing inadequate health care, a plaintiff must
allege facts that show that he had a serious medical need for
medical treatment and that the defendant was deliberately
indifferent to that need.  Snell v. Neville, 998 F.3d 474, 495
(1st Cir. 2021).  A serious medical need is one that is
diagnosed or that is so obvious even a lay person would realize
that care was necessary.  Id.  Deliberate indifference is shown
if the defendant ignored or worsened the plaintiff's serious
medical need or if the care provided was so inadequate as to
shock the conscience.  Id. at 497.

    On the other hand, "substandard care, malpractice,
negligence, inadvertent failure to provide care, and
disagreement as to the appropriate course of treatment are all
insufficient to prove a constitutional violation."  Ruiz-Rosa v.
Rullan, 485 F.3d 150, 156 (1st Cir. 2007).  Deliberate
indifference requires a culpable state of mind.  Zingg v.
Groblewski, 907 F.3d 630, 635 (1st Cir. 2018).  "To show such a

11

state of mind, the plaintiff must provide evidence that the defendant had actual knowledge of impending harm, easily preventable, and yet failed to take the steps that would have easily prevented that harm." Id. (internal quotation marks and citation omitted).

For purposes of preliminary review, the court will assume that Wescott's PTSD, MDDR, and survivor's guilt were serious medical needs within the meaning of the Eighth Amendment. Wescott's allegations about the care and treatment provided by the defendants, specifically by Dr. Brown and the clinicians, Abby Simon, Sheila Fournier, and Ahmed Gabir, do not show deliberate indifference to Wescott's serious medical needs.

Wescott met regularly with Dr. Brown who discussed Wescott's symptoms and concerns with him.  Dr. Brown prescribed medications to address the diagnosed conditions and identified issues and tried different medications and combinations of medications to provide better treatment.  As alleged by Wescott, Dr. Brown changed medications often and then reviewed the results with Wescott.

Wescott was part of the sex offender treatment program administered by Sheila Fournier where he discussed his various mental health issues.  The prison was monitoring Wescott carefully and became aware that he might be at risk for a suicide attempt, despite his efforts to keep his plans secret,

because of a recorded telephone conversation.  Wescott was
summoned for a suicide risk assessment that was done by Simon,
with Fournier in attendance.  Gabir, another clinician, also
interacted with Wescott to address his mental health issues.

Wescott contends that Dr. Brown did not provide as much
treatment as Wescott thought was necessary, did not appreciate
the risk of suicide, and did not comply with the standard of
care that Wescott believes applied.  He also contends that the
clinicians were not as qualified for their positions or as
competent as they should be.  He notes that the treatment the
defendants provided did not prevent his suicide attempt.

Despite Wescott's criticisms, he has not alleged facts that
show any of the defendants were deliberately indifferent to his
mental health needs based on his diagnosed mental health
conditions or the suspected risk of a suicide attempt.  Instead,
Wescott's allegations show that the defendants were attentive,
vigilant, and provided treatment for Wescott's mental health
issues.  Wescott did not allege facts to show that the
defendants were aware of a strong likelihood of an imminent
suicide attempt.  See Noone v. Carpenter, No. 21-cv-10959-AK,
2022 WL 1462747, at *4 (D. Mass. May 9, 2022).  Therefore,
Wescott's claims in Counts I, II, III, and XIV should be
dismissed.

Further, Wescott's remaining claims are based on the allegations of an Eighth Amendment violation in Counts I, II, III, and XIV.  For that reason, the remaining claims should also be dismissed for lack of allegations to support an Eighth Amendment violation.  The remaining claims are also addressed on other grounds as follows.

B.  Liability of Corporate Entities and Supervisors

Wescott brings claims against current and former supervisors and corporate entities that provided medical care at the prison.  As a threshold matter, because Wescott has not alleged an Eighth Amendment violation by Dr. Brown or Simon, Fournier, or Gabil, he lacks a basis for an Eighth Amendment claim based on an implied liability theory.  Further, even if Wescott had alleged an Eighth Amendment violation, he has not alleged grounds to support his claims against those entities and supervisors.

1.  Corporate Entities

Courts have applied the standard for municipal liability under § 1983 to independent corporate entities that contract to provide medical services in prisons.  See, e.g., Reck v. Wexford Health Sources, Inc., 27 F.4th 473, 487-89 (7th Cir. 2022); De Rossitte v. Correct Care Solutions, LLC, 22 F.4th 796, 803-04 (8th Cir. 2022) accord Sosa v. Mass. Dep't of Corr., 18-cv-

12223-NMG, 2019 WL 3557701, at *6 (D. Mass. Aug. 2, 2019). For
that purpose, a plaintiff must allege facts to show that his
medical needs were disregarded, in violation of the Eighth
Amendment, pursuant to a custom, policy, or practice of the
corporate entity. Vartinelli v. Aramark Corr. Servs., LLC, 796
F. App'x 867, 871-72 (6th Cir. 2019).

In this case, Wescott alleges that MHM Correctional
Services, Inc., MHM Correctional Services, LLC, and their parent
company, Centurion of New Hampshire, LLC, failed to provide
adequate mental health care to him in violation of their
contract with the DOC. He also alleges that Dartmouth Hitchcock
provided inadequate mental health services between 2002 and
2013. As addressed above, Wescott has not alleged an Eighth
Amendment violation by the prison's medical care providers.
Further, he provides no allegations that the corporate entities
had a policy, practice, or custom that caused him harm.
Therefore, Counts V, XII, and XIII should be dismissed.

### 2. Supervisory Liability

No vicarious liability exists under § 1983. Ashcroft v.
Iqbal, 556 U.S. 662, 676 (2009). Supervisors may be liable only
for their own actions or omissions that caused a constitutional
violation. Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st
Cir. 2005). A plaintiff must allege facts that show that a

subordinate of the supervisor violated the plaintiff's
constitutional right and that the supervisor's action or failure
to act was linked to the conduct "in the sense that it could be
characterized as gross negligence amounting to deliberate
indifference." Justiniano v. Walker, 986 F.3d 11, 20 (1st Cir.
2021).  In addition, a plaintiff must allege facts that show a
solid causal link between the supervisor's action for failure to
act and the resulting constitutional violation.  Id.

        Wescott alleges that Chief Psychiatrist Dr. Wendy Martin,
violated his Eighth Amendment rights by failing to train and
supervise Dr. Brown and Clinicians Simon and Fournier and other
staff members.  He alleges that Commissioner Hanks is
vicariously liable for contracting with HMH or Centurion.

        A supervisor may be liable for a constitutional violation
if she "supervises, trains, or hires a subordinate with
deliberate indifference toward the possibility that deficient
performance of the task eventually may contribute to a civil
rights deprivation." Sanchez v. Pereira-Castillo, 590 F.3d 31,
49 (1st Cir. 2009) (internal quotation marks omitted). Wescott
does not allege facts that show any violation of his Eighth
Amendment rights by Dr. Brown, Simon, or Fournier or by HMH or
Centurion.  In the absence of a constitutional violation,
Wescott lacks allegations to support his claim that Dr. Martin
failed to train and supervise Dr. Brown and Clinicians Simon and

Fournier that resulted in violation of his Eighth Amendment
rights.  He also lacks allegations to show that Commissioner
Hanks is liable for an Eighth Amendment violation.  Therefore,
Counts IV and XII should be dismissed.


    C. Laaman Decree and Holliday Order

    In support of many of his claims, Wescott alleges that the
defendants failed to follow the requirements set forth in the
Laaman decree and the Holliday order.  As he acknowledges,
however, he cannot enforce either of those court actions in this
case.  Holliday is a state court order applying the Laaman
decree in state court.  Laaman is a decree issued by this court
but is only enforceable in state court.  See Logsdon v. Wrenn,
No. 16-CV-502-LM, 2019 WL 1428888, at *6 (D.N.H. Feb. 28, 2019),
report and recommendation adopted sub nom. Logsdon v. NH Dep't
of Corr., No. 16-CV-502-LM, 2019 WL 1429548 (D.N.H. Mar. 29,
2019).

    Therefore, all claims based on the Laaman decree and the
Holliday order should be dismissed.  For that reason, Counts IX
and X should be dismissed, and Counts VI and VII should be
dismissed to the extent they are based on failure to comply with
the Laaman decree and the Holliday order.

D.  <u>State Created Danger</u>

In several of his claims, Wescott alleges that the defendants are liable for an Eighth Amendment violation because they caused a "State Created Danger."  A state-created danger is addressed in the context of the substantive due process clause of the Fourteenth Amendment.  Irish v. Fowler, 979 F.3d 65, 73 (1st Cir. 2020).  To state a viable claim, a plaintiff must allege facts that show that the defendant acted affirmatively "to increase the threat to an individual of third-party private harm."  Id. at 74.  The defendant "must actually have created or escalated the danger to the plaintiff" and the danger must be specific to the plaintiff and not be generally applicable to the public.  Id.  Further, the defendant's actions must shock the conscience.  Id.

None of the defendants named by Wescott caused a state-created danger that harmed Wescott.  He does not allege facts that show any defendant created or escalated the risk or danger of his attempted suicide (or any other risk of harm or danger) or that their actions shock the conscience.  Wescott's allegations that the named officials are not qualified for their jobs, did not properly supervise other officers or providers, and did not follow prison policies or procedures do not approach the high standard necessary to allege a substantive due process claim.  Therefore, Counts VI, VII, and VIII should be dismissed.

E.   Violation of Contracts

Wescott contends that various defendants violated the terms of the contracts between the DOC and the third-party medical care providers.  Those claims, at most, raise state-law breach of contract claims, not Eighth Amendment claims.  Therefore, Count XVI and XVIII should be dismissed.

F.   Violation of State Statutes and Prison Policies and Procedures

Civil rights actions under § 1983 are limited to claims that the defendants violated federal law.  See Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011).  Prison policies and procedures do not create federal rights and are not actionable under § 1983.  Doiron v. Brown, 21-cv-360-SM, 2022 WL 1607861, at *9 (D.N.H. Apr. 25, 2022) (app'd May 20, 2022).  For that reason, Wescott's allegations that the defendants violated New Hampshire statutes and prison policies and procedures do not state a claim under § 1983.  Therefore, Counts XI, XV, and XVII should be dismissed.

G.   Claim under § 1985

Wescott alleges that Hanks and the corporate entities that provided medical care at the prison conspired not to comply with

19

the DOC contracts and not to comply with the standards of the
American Psychological Association.  Section 1985 does not apply
to the defendants' actions that Wescott alleges.  See Kush v.
Rutledge, 460 U.S. 719, 724-25 (1983) (construing the three
sections of § 1985).  Therefore, Count XVIII should be
dismissed.

## Conclusion

For the foregoing reasons, the district judge should
dismiss the complaint (document no. 1) and the amendment
(document no. 2) as failing to state a cognizable cause of
action.

Any objections to this Report and Recommendation must be
filed within fourteen days of receipt of this notice.  See Fed.
R. Civ. P. 72(b)(2).  The fourteen-day period may be extended
upon motion.  Only those issues raised in the objection to this
Report and Recommendation are subject to review in the district
court.  See Sch. Union No. 37 v. United Natl Ins. Co., 617 F.3d
554, 564 (1st Cir. 2010).  Any issues not preserved by such
objection(s) are precluded on appeal.  See id.  Failure to file
any objections within the specified time waives the right to

appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).


Andrea K. Johnstone
United States Magistrate Judge

June 2, 2022

cc: Richard Wescott, pro se.